MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANTONIO IVAN CAMPOS MARIN, JOSE
RIGOBERTO SARCENO GARCIA, and
MARIA LUZMILA CHAFLA YAMBA,

**FIRST AMENDED**
**COMPLAINT**

*Plaintiffs*,

                    -against-

J&B 693 CORP. (D/B/A CASA AGAVE), LOS
LIZARDOS, INC. (D/B/A CASA AGAVE),
9TH AVE LIME JUNGLE, INC. (D/B/A
LIMON JUNGLE), BKUK 9 CORP (D/B/A
LIME JUNGLE EMPANADAS), BESIM
KUKAJ, DIANA DE LOS ANGELES,
FRANCISCO SORIANO, and MARTIN
BARROSO,

**ECF Case**

*Defendants.*

-------------------------------------------------------X

        Plaintiffs Antonio Ivan Campos Marin, Jose Rigoberto Sarceno Garcia, and Maria Luzmila

Chafla Yamba, by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against J&B 693 Corp. (D/B/A Casa Agave), Los Lizardos, Inc.

(D/B/A Casa Agave), 9th Ave Lime Jungle, Inc. (D/B/A Limon Jungle), BKUK 9 Corp (D/B/A

Lime Jungle Empanadas), ("Defendant Corporations"), Besim Kukaj,  Diana de Los Angeles,

Francisco Soriano, and  Martin Barroso, ("Individual Defendants"), (collectively, "Defendants"),

allege as follows:

## NATURE OF ACTION

1.     Plaintiffs are former employees of Defendants J&B 693 Corp. (D/B/A Casa Agave), Los Lizardos, Inc. (D/B/A Casa Agave), 9th Ave Lime Jungle, Inc. (D/B/A Limon Jungle), BKUK 9 Corp (D/B/A Lime Jungle Empanadas), Besim Kukaj, Diana de Los Angeles, Francisco Soriano, and Martin Barroso.

2.     Defendants owned, operated, or controlled two Mexican restaurants, one located at 693 Ninth Avenue, New York, New York 10036 under the name "Casa Agave", one located at 803 9th Ave, New York, NY 10019 under the name "Limon Jungle", and owe, operate or control one Mexican restaurant located at 197 7th Ave, New York, NY 10011 under the name "Lime Jungle Empanadas".

3.     Upon information and belief, individual Defendants Besim Kukaj, Diana de Los Angeles, Francisco Soriano, and Martin Barroso, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through this corporate entity, operate or operated the restaurants as a joint or unified enterprise.

4.     Plaintiffs were employed as delivery workers and a cook at these Mexican restaurants located at 693 Ninth Avenue, New York, New York 10036 and 803 9th Ave, New York, NY 10019.

5.     Plaintiffs Campos and Sarceno were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing dressings, packing sauces, twisting and folding cardboard, bringing ice from other restaurants that have the same owner, going out to buy supplies, bringing up items taking out the garbage, sweeping and mopping, and cleaning the refrigerator (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants employed and accounted for Plaintiffs Campos and Sarceno as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    Regardless, at all relevant times, Defendants paid Plaintiffs Campos and Sarceno at a rate that was lower than the required tip-credit rate.

12.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs Campos and Sarceno at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

14.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without  providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES

R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Mexican restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

18.    Plaintiff Antonio Ivan Campos Marin ("Plaintiff Campos" or "Mr. Campos") is an adult individual residing in Bronx County, New York.

19.    Plaintiff Campos was employed by Defendants at Casa Agave from approximately 2011 until on or about November 15, 2018.

20.    Plaintiff Jose Rigoberto Sarceno Garcia ("Plaintiff Sarceno" or "Mr. Sarceno") is an adult individual residing in Queens County, New York.

21.    Plaintiff Sarceno was employed by Defendants at Casa Agave from approximately July 2013 until on or about November 2018.

22.    Plaintiff Maria Luzmila Chafla Yamba ("Plaintiff Chafla" or "Ms. Chafla") is an adult individual residing in Queens County, New York.

23.    Plaintiff Chafla was employed by Defendants at Casa Agave from approximately December 2013 until on or about November 25, 2018.

*Defendants*

24. At all relevant times, Defendants owned, operated, or controlled a Mexican restaurant, located at 693 Ninth Avenue, New York, New York 10036 under the name "Casa Agave (f/k/a Limon Jungle)".

25. Upon information and belief, J&B 693 Corp. (d/b/a Casa Agave (f/k/a Limon Jungle)) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 693 Ninth Avenue, New York, New York 10036.

26. Upon information and belief, Los Lizardos, Inc. (D/B/A Casa Agave) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 693 Ninth Avenue, New York, New York 10036.

27. Upon information and belief, 9th Ave Lime Jungle, Inc. (D/B/A Limon Jungle) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 803 9th Ave New York, NY 10019.

28. Upon information and belief, BKUK 9 Corp (D/B/A Lime Jungle Empanadas) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 197 7th Ave, New York, NY 10011.

29. Defendant Besim Kukaj is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Besim Kukaj is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Besim Kukaj possesses operational control over Defendant Corporations, an ownership interest in

Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.    Defendant Diana de Los Angeles is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Diana de Los Angeles is sued individually in her capacity as a manager of Defendant Corporation. Defendant Diana de Los Angeles possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.    Defendant Francisco Soriano is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Francisco Soriano is sued individually in his capacity as a manager of Defendant Corporation. Defendant Francisco Soriano possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.    Defendant Martin Barroso is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Martin Barroso is sued individually in his capacity as a manager of Defendant Corporation. Defendant Martin Barroso possesses operational control over Defendant Corporation and controls significant functions of

Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

33.    Defendants operate a Mexican restaurant located in the Hell's Kitchen section of Manhattan in New York City.

34.    Individual Defendants, Besim Kukaj, Diana de Los Angeles, Francisco Soriano, and Martin Barroso, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

35.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.    Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs

.

37.    Defendants jointly employed Plaintiffs and are Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

38.    In the alternative, Defendants constitute a single employer of Plaintiffs.

39.    Upon information and belief, Individual Defendant Besim Kukaj operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

   b)    defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate

corporate records,

    c) transferring assets and debts freely as between all Defendants,

    d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

    e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

    f) intermingling assets and debts of his own with Defendant Corporation,

    g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

    h) Other actions evincing a failure to adhere to the corporate form.

40. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.

41. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

42. In each year from 2013 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

43. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

44. Plaintiffs are former employees of Defendants who were employed as cooks and ostensibly as delivery workers. However, the delivery workers spent over 20% of each shift performing the non-tipped duties described above.

*Plaintiff Antonio Ivan Campos Marin*

45.    Plaintiff Campos was employed by Defendants from approximately 2011 until on or about November 15, 2018.

46.    Defendants employed Plaintiff Campos as a cook and ostensibly as a delivery worker.

47.    However, when ostensibly working as a delivery worker, Plaintiff Campos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

48.    Although Plaintiff Campos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

49.    Plaintiff Campos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

50.    Plaintiff Campos's work duties required neither discretion nor independent judgment.

51.    Throughout his employment with Defendants, Plaintiff Campos regularly worked in excess of 40 hours per week.

52.    From approximately January 2013 until on or about December 2014, Plaintiff Campos worked as a delivery worker from approximately 11:00 a.m. until on or about 4:00 p.m., Tuesdays, Thursdays and Fridays,  and as a cook from approximately 5:00 p.m. until on or about

53.    11:00 p.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 12:00 a.m., Thursdays and Fridays, from approximately 11:00 a.m. until on or about 12:00 a.m., on Saturdays, and from approximately 10:00 a.m. until on or about 11:00 p.m., on Sundays (typically 67 hours per week).

54.    From approximately January 2015 until on or about December 2016, Plaintiff Campos worked as a cook from approximately 5:00 p.m. until on or about 11:00 p.m. Mondays and Tuesdays, from approximately 5:00 p.m. until on or about 12:00 a.m. Thursdays and Fridays, from approximately 11:00 a.m. until on or about 12:00 a.m. on Saturdays, and from approximately 10:00 a.m. until on or about 11:00 p.m. on Sundays (typically 52 hours per week).

55.     From approximately January 2017 until on or about November 15, 2018, Plaintiff Campos worked as a cook from approximately 5:00 p.m. until on or about 11:00 p.m. Tuesdays and Wednesdays, from approximately 5:00 p.m. until on or about 12:00 a.m. Thursdays, Fridays, and Saturdays, and from approximately 10:00 a.m. until on or about 11:00 p.m. on Sundays (typically 46 hours per week).

56.     From approximately January 2013 until on or about December 2013, Defendants paid Plaintiff Campos his wages in cash.

57.     From approximately January 2014 until on or about November 15, 2018, Defendants paid Plaintiff Campos his wages by personal check.

58.     From approximately January 2013 until on or about December 2013 and then from approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Campos a fixed salary of $650 per week.

59.     From approximately January 2014 until on or about December 2014 and from approximately January 2016 until on or about November 15, 2018, Defendants paid Plaintiff Campos a fixed salary of $700 per week.

60.     Defendants did not pay Plaintiff Campos approximately $2,800 for hours worked.

61.     Plaintiff Campos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

62.     For example, Defendants required Plaintiff Campos to start working one hour prior to his scheduled start time or continue working 1 hour past his scheduled departure time one day a week, and did not pay him for the additional time he worked.

63.     Defendants never granted Plaintiff Campos any breaks or meal periods of any kind.

64.     Plaintiff Campos was never notified by Defendants that his tips were being included as an offset for wages.

65.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Campos's wages

66.    Although Plaintiff Campos was required to keep track of his time, Defendants' time tracking device did not work properly. Furthermore, Defendants required him to punch in and out only for 40 hours and nothing beyond that.

67.    Defendants required Plaintiff Campos to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

68.    In general, on a number of occasions, Defendants required Plaintiff Campos to sign a document, the contents of which he was not allowed to review in detail.

69.    Prior to 2025, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Campos regarding overtime and wages under the FLSA and NYLL. Further, this notification was never up to date.

70.    Defendants did not provide Plaintiff Campos an accurate statement of wages, as required by NYLL 195(3).

71.    Defendants did not give any notice to Plaintiff Campos, in English and in Spanish (Plaintiff Campos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

72.    Defendants required Plaintiff Campos to purchase "tools of the trade" with his own funds—including uniform, a bicycle, and a helmet.

*Plaintiff Jose Rigoberto Sarceno Garcia*

73.    Plaintiff Sarceno was employed by Defendants from approximately July 2013 until on or about December 2018.

74.    Defendants ostensibly employed Plaintiff Sarceno as a delivery worker.

75.    However, Plaintiff Sarceno was also required to spend a significant portion of his work day performing the non-tipped duties described above.

76.    Although Plaintiff Sarceno ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

77.    Plaintiff Sarceno regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

78.    Plaintiff Sarceno's work duties required neither discretion nor independent judgment.

79.    From approximately July 2013 until on or about December 2015, Plaintiff Sarceno worked from approximately 11:00 a.m. until on or about 10:00 p.m., three days a week and from approximately 5:00 p.m. until on or about 11:30 p.m., three days a week (typically 52.5 hours per week).

80.    From approximately January 2016 until on or about October 2017, Plaintiff Sarceno worked from approximately 5:00 p.m. until on or about 12:00 a.m., two days a week and from approximately 5:00 p.m. until on or about 11:00 p.m., four days a week (typically 38 hours per week).

81.    From approximately November 2017 until on or about November 2018, Plaintiff Sarceno worked from approximately 5:00 p.m. until on or about 1:00 a.m., two days a week, from approximately 11:00 a.m. until on or about 10:00 p.m., one day a week, and from approximately 5:00 p.m. until on or about 12:00 a.m., three days a week (typically 48 hours per week).

82.    From approximately July 2013 until on or about December 2014, Defendants paid Plaintiff Sareno his wages in cash.

83.    From approximately January 2015 until on or about November 2018, Defendants paid Plaintiff Sarceno his wages by personal check.

84.    From approximately July 2013 until on or about June 2016, Defendants paid Plaintiff Sarceno $5.60 per hour.

85.    From approximately June 2016 until on or about November 2018, Defendants paid Plaintiff Sarceno a fixed salary of $200 per week.

86.    For approximately three weeks, Defendants did not pay Plaintiff Sarceno any wages for his work.

87.    Plaintiff Sarceno's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

88.    For example, Defendants required Plaintiff Sarceno to work an additional 30 to 45 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

89.    Defendants never granted Plaintiff Sarceno any breaks or meal periods of any kind.

90.    Plaintiff Sarceno was never notified by Defendants that his tips were being included as an offset for wages.

91.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sarceno's wages.

92.    After July 2018, Plaintiff Sarceno was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked. Furthermore, the machine, when available, did not work properly so it did not accurately reflect or register his actual hours worked.

93.    From approximately 2013 until on or about 2015, Defendants required Plaintiff Sarceno to sign a document, the contents of which he was not allowed to review in detail. Similarly, from approximately 2016 until on or about November 2018, Defendants required Plaintiff Sarceno to sign a blank document, in order to release his weekly pay.

94.    In addition, in order to get paid, Plaintiff Sarceno was required to sign a document in which Defendants misrepresented the hours that he worked per week.

95.    Prior to 2016, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Sarceno regarding overtime and wages under the FLSA and NYLL.

96.    Defendants did not provide Plaintiff Sarceno an accurate statement of wages, as required by NYLL 195(3).

97.    In fact, from approximately 2013 until on or about 2016, Defendants adjusted Plaintiff Sarceno's paystubs so that they reflected inaccurate wages and hours worked.

98.    Defendants did not give any notice to Plaintiff Sarceno, in English and in Spanish (Plaintiff Sarceno's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

99.    Defendants required Plaintiff Sarceno to purchase "tools of the trade" with his own funds—including two bicycles, two vests, one helmet, and bicycle maintenance.

*Plaintiff Maria Luzmila Chafla Yamba*

100.    Plaintiff Chafla was employed by Defendants from approximately December 2013 until on or about November 25, 2018.

101.    Defendants employed Plaintiff Chafla as a cook.

102.    Plaintiff Chafla regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

103.    Plaintiff Chafla's work duties required neither discretion nor independent judgment.

104.    Throughout her employment with Defendants, Plaintiff Chafla regularly worked in excess of 40 hours per week.

105.    From approximately December 2013 until on or about December 2015, Plaintiff Chafla worked from approximately 10:00 a.m. until on or about 6:00 p.m., one day a week and  from approximately 10:00 a.m. until on or about 9:00 p.m., four days a week (typically 52 hours per week).

106.    From approximately January 2016 until on or about April 2018, Plaintiff Chafla worked from approximately 10:00 a.m. until on or about 6:00 p.m., one day a week and from approximately 10:00 a.m. until on or about 9:00 p.m., five days a week (typically 63 hours per week).

107.    From approximately May 2018 until on or about November 25, 2018, Plaintiff Chafla worked from approximately 9:00 a.m. until on or about 8:00 p.m., six days a week (typically 66 hours per week).

108.    From approximately December 2013 until on or about December 2014, Defendants paid Plaintiff Chafla her wages in cash.

109.    From approximately January 2014 until on or about November 25, 2018, Defendants paid Plaintiff Chafla her wages by personal check.

110. From approximately December 2013 until on or about December 2014, Defendants paid Plaintiff Chafla a fixed salary of $575 per week.

111. From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Chafla a fixed salary of $450 per week.

112. From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Chafla a fixed salary of $500 per week.

113. From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Chafla a fixed salary of $550 per week.

114. From approximately January 2018 until on or about November 25, 2018, Defendants paid Plaintiff Chafla a fixed salary of $600 per week.

115. For approximately four days, Defendants did not pay Plaintiff Chafla any wages for her work.

116. Plaintiff Chafla's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

117. For example, Defendants required Plaintiff Chafla to work an additional 3 hours past her scheduled departure time every day, and did not pay her for the additional time she worked.

118. Throughout her employment, Defendants required Plaintiff Chafla to keep track of time using two separate identification numbers that did not accurately reflect her actual hours worked. Furthermore, Defendants usually ran out of timecards, so the hours worked by Plaintiff Chafla were not accurately recorded.

119. Defendants required Plaintiff Chafla to sign a document, the contents of which she was not allowed to review in detail, in order to release her weekly pay.

120. In general, on a number of occasions, Defendants required Plaintiff Chafla to sign a document, the contents of which she was not allowed to review in detail.

121. Defendants did not provide Plaintiff Chafla an accurate statement of wages, as required by NYLL 195(3).

122. Defendants did not give any notice to Plaintiff Chafla, in English and in Spanish

(Plaintiff Chafla's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

123.   Defendants required Plaintiff Chafla to purchase "tools of the trade" with her own funds—including five uniforms per year and two pairs of kitchen shoes.

*Defendants' General Employment Practices*

124.   At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

125.   Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages they were owed for the hours they worked.

126.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

127.   Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

128.   Defendants required Plaintiffs Campos and Sarceno and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

129.   These Plaintiffs ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

130.   These Plaintiffs' duties were not incidental to their occupation as tipped workers, but

131.   instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

132.   These Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

133.   However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day,

whichever is less) (12 N.Y.C.R.R. § 146).

134.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

135.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

136.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

137.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

138.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Campos worked.

139.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

140.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

141.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

142.    Defendants paid Plaintiffs their wages in cash and then by personal checks.

143.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of

the FLSA and NYLL.

144.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for their full hours worked.

145.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

146.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs.

147.    Defendants failed to provide Plaintiffs  with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

148.    Defendants failed to provide Plaintiffs at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

149.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

151.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

152.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

153.   Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

154.   Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

155.   Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

156.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157.   Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

158.   Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

159.   Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

162.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

163.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

164.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    Defendants, in violation of N.Y. Lab. Law § 190 et seq., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

167.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

168.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

172.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

173.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW

174.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

175.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

176.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

177.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate

statement listing each of the following: the dates of work covered by that payment of wages; name

of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross

wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours

worked; and the number of overtime hours worked, as required by NYLL 195(3).

179.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

180.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses

for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R.

§ 531.35; N.Y. Lab. Law §§ 193 and 198-b.

182.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

183.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

184.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL

§191.

185. Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

Defendants by:

(a)  Designating this action as a collective action and authorizing prompt issuance of notice

pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)  Declaring  that Defendants violated the  minimum  wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d) Declaring that Defendants violated the  recordkeeping  requirements  of,  and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f) Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)  Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)  Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k) Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l) Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m) Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n) Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o) Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p) Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)  Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r) Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
       August 30, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:            /s/ Michael Faillace
           Michael Faillace [MF-8436]
           60 East 42nd Street, Suite 4510
           New York, New York 10165
           Telephone: (212) 317-1200
           Facsimile: (212) 317-1620
           *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 9, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Antonio Ivan Campos Marin a.k.a. Antonio Campos or Campus

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        9 de Enero 2019

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 9, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Jose Rigoberto Sarceno Garcia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       9 de enero 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 9, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Maria Luzmila  Chafla  Yamba

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              9 de Enero 2019

*Certified as a minority-owned business in the State of New York*